## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**DEBORAH LAUFER,**
        **Plaintiff,**

**v.**                                                     **Case No: 1:20-cv-2136**


**NARANDA HOTELS, LLC,**
        **Defendant.**

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Plaintiff, by and through undersigned counsel, hereby submits this Memorandum in

Opposition To Defendant's Motion To Dismiss, filed at DE 13-1**.**

### I.      Introduction

Plaintiff is a disabled person within the meaning of the Americans With Disabilities Act,

42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or cane to ambulate and is

vision impaired. Laufer Affid., Exhibit A hereto, para. 1. Plaintiff is a resident of Florida. *Id*. at 1.

In the past, Plaintiff encountered frustration when attempting to book rooms at a hotel because so

few online reservations systems fail to identify or allow for booking of accessible rooms and

provide little or no information about whether the features at the hotel are accessible. In many

instances, website claims of "accessibility" prove to be untrue when she arrives at the hotel. *Id*.

para. 3.  As a result, Plaintiff is an advocate, or "tester", for the purpose of bringing hotel online

reservations systems into compliance with the law. *Id*.

Defendant books rooms for its hotel through an online reservations system.  (Hereinafter

"websites", "online reservations systems" or "ORS".)  *Id*. at 6. The purpose of this ORS is so that

Defendant can reach out and market to persons all over the country and in their own homes  to

1

solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible.

On several different occasions prior to the filing of this lawsuit, Plaintiff reviewed the online reservations system for Defendant's hotel and found that it did not comply with the Regulation in any respect. Laufer Affid., at 6.  Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA.

Plaintiff  has a system to ensure that she properly maintains standing. *Id*. at 8. She maintains a list of all hotels she has sued over ORS violations. She goes through and updates this list constantly. With respect to each hotel she sues or has sued, she revisits the hotel's ORS multiple times before a complaint is filed, then again shortly after the complaint is filed. *Id*. Pursuant to this system, Plaintiff has already revisited the hotel's ORS. *Id.* at 8.  When a case is settled, she records the date when the ORS is required to be complaint and then revisits it. *Id.* By this system, Plaintiff ensures that she visits each and every hotel ORS multiple times after she has filed a complaint.

Moreover, as soon as the Covid crisis abates, Plaintiff intends to travel to Maryland, travel all over the State, including the Baltimore area, and stay in area hotels. *Id*., para. 5. Because this and other hotels do not comply with the Regulation, Plaintiff is deprived of the information she needs to make a meaningful choice in planning her trip. *Id.*

Defendant does not challenge the fact that the websites it uses to accept reservations

discriminates against disabled persons. Rather, Defendant filed its Motion To Dismiss claiming

that plaintiff cannot have a cause of action unless she stayed at or intended to book a room at the

hotel. Additionally, Defendant makes a material misrepresentation by claiming that it has no

control over the third party providers through which it accepts reservations: namely,

booking.com, trip.com, priceline, agoda, expedia and orbitz.  (Hereinafter "Third Party ORS

Providers".) For the reasons below, Defendant's arguments are without merit.

## II.    The Applicable Standard

Defendant's motion is based on Fed. R. Civ. Pro. 12(b)(6).

Under Fed. R. Civ. P. 12(b)(6), a district court must "accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." *Franks v.

Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

Where the factual issues relevant to a jurisdictional challenge are intertwined with the

merits of the plaintiff's claim, dismissal under Fed. R. Civ. P. 12(b)(1) is inappropriate. See

*Kerns v. United States*, 585 F.3d 187, 195 (4th Cir. 2009). In such cases, a "district court should

assume jurisdiction and assess the merits of the claim when the relevant facts -- for jurisdictional

and merits purposes -- are inextricably intertwined." *Id*. citing *United States ex rel. Vuyyuru v.

Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009), *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

In *Adams*, the Seventh Circuit explained the standard as follows:

> In judging this evidentiary attack, the trial court necessarily assumes a different
> role than in a proceeding to resolve a 12(b)(1) motion based on contentions that the
> complaint was jurisdictionally deficient on its face. The burden of proving subject matter
> jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. A
> trial court may consider evidence by affidavit, depositions or live testimony without
> converting the proceeding to one for summary judgment. See *Mims v. Kemp*, 516 F.2d 21
> (4th Cir. 1975). Unlike the procedure in a 12(b)(6) motion where there is a presumption

reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction. This does not usually present a serious problem except in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute. It is the better view that in such cases the entire factual dispute is appropriately resolved only by a proceeding on the merits.

In the case at bar, Defendant's challenge is essentially whether or not Plaintiff has suffered an injury in fact. This requires an analysis of the facts in light of the injury defined by the Regulation and the statute. Therefore, because these facts are intertwined with the merits of Plaintiff's case, this Court must allow the case to proceed on the merits.  If a court is going to disbelieve the plaintiff on the issue of standing, it cannot be in the context of a rule 12(b)(1) motion, but must be pursuant to the factfinding process. *Brooke v. Kashl Corp.*, 362 F. Supp.3d 864, 876  (S.D. Ca. 2019).

For the reasons set forth below, Plaintiff submits that her pleadings are sufficient. It is not necessary that she plead her intentions or travel plans. Rather, she has a full and complete cause of action because the statute and Regulation unambiguously set forth the actionable injury-in-fact. However, out of an abundance of caution, Plaintiff submits her affidavit which additionally explains her system and intentions.

## III.    The Pleadings Are Sufficient

Fed. R. Civ. P. 8 requires that the pleader provide a short and plain statement of the claim showing entitlement to relief. Many courts have upheld the sufficiency of virtually identical pleadings and have rejected challenges against their sufficiency. See, e.g., *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc.*, 19-60613, DE 23 (S.D. Fla. 6/6/19);  *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19)(denying motion to dismiss); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-

WPD, DE 10 (S.D. Fla. 3/5/19)(denying motion to dismiss).

Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Excel Hospitality, LLC*, 1:20-cv-2334, DE 15 (N.D. Il. 7/31/20); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Laufer v. Laxmiben Champiklal, LLC*, 4:20-cv-32-LMM, DE 24 (N.D. Ga. 9/10/20); *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19);   *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality*, LLC, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019);  *Kennedy v. Pacifica Tampa Ltd Partnership*, 5:17-cv-442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18). *Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019);  *Kennedy v. Astoria Hotel Suites, LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19); *Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019); and *Kennedy v. Rushi Hospitality LLC*, 18-cv-62259-WPD, DE 26 (S.D. Fla. 2/6/19).

## IV.    Defendant's Argument Is Without Merit

In its effort to become immune from the law, Defendant argues that a disabled plaintiff cannot have a cause of action for encountering a hotel's discriminatory online reservations system unless they intend to visit the hotel. Defendant completely ignores the overwhelming slew

of cases, on point, in which numerous courts have considered and rejected Defendant's theory.

The entire foundation of Defendant's main argument is misplaced because Defendant fails to understand the nature and locus of the injury. Defendant's entire theory is based on the mistaken proposition that the plaintiff can only suffer past and future injury-in-fact AT the physical property by encountering physical barriers to access or that plaintiff cannot have a cause of action for encountering a discriminatory website unless she intended to book a room at the hotel. (Hereinafter "physical nexus" requirement.)

Defendant ignores the vast body of authorities which have considered and rejected Defendant's arguments. The arguments raised by Defendant have been raised numerous times by others, and have been universally rejected.  In *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court in the Middle District of Florida rejected the defendant's argument that the plaintiff needed to intend to book a room at the hotel. First, the court held that the plaintiff sufficiently "alleged he suffered an injury in fact by encountering barriers that violate the ADA." *Id.*, at **4-5. The court directly rejected the defendant's argument that the plaintiff lacked standing because he never visited or intended to visit the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the relevant 'future injury' inquiry relates to the motel's website and reservation system, rather than the motel's physical property." [Citation omitted.] While Parks may have never visited the motel, he visited its website and several third-party sites.

*Id*. at *7.

In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31, (M.D. Fla. June 18, 2018), a court in the Middle District rejected a physical nexus argument, holding that the plaintiff's injury occurred in comfort of her own home when she visited

defendant's discriminatory hotel website.

In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20), another district court rejected the defendant's arguments (filed at DE 39) that a physical nexus was required between a discriminatory ORS and the physical hotel.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), one court in the Northern District of Georgia rejected a defendant's argument (filed at DE 5) that the plaintiff lacked standing because she did not intend to use the discriminatory ORS to book a room. As the court put it: "[Defendant]'s argument [] centers on whether [plaintiff] suffered a concrete and particularized injury only from visiting [the hotel's] website and not the physical premises. DE 16, at pp. 7-8. In rejecting the defendant's argument, the court held that: "visiting the website suffices" and that "a plaintiff's inability to fully and effectively use an establishment's website constitutes an injury-in-fact." *Id*. at 9. The court further stated:

> [T]he Court finds that [plaintiff] has sufficiently alleged an injury-in-fact as a result of visiting Lakeside's deficient website under 28 C.F.R. § 36.302(e)(1)(ii). She visited the website to review and assess the accessible features of the Lakeside Inn.  Because the website lacked the requisite information, she could not determine whether the physical location met her accessibility needs. Lakeside thus deprived her of the services otherwise available to the general public. These allegations are sufficient to establish a past injury for the purposes of standing.
> ....

> As with the past injury, the Court has previously held in a different context that alleging an intent to return to a website that threatens continued exposure to discrimination is sufficient to establish a threat of future injury. [Citation omitted.] Given the finding above that the alleged injury stems from [plaintiff's] visiting Lakeside's deficient website, the Court finds that the relevant inquiry is whether she is likely to return to the website again.

*Id*. at 9-10, 12.

In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019), another court rejected similar arguments that intent to visit the hotel's website, alone, was insufficient. The court held that the plaintiff's ADA claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry relates to the motel's website and reservation system, rather than the motel's physical property." *Id*.

In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018), a court recognized the plaintiff's motive for returning to the discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that motive to review the website solely to test it was sufficient and that intending to book a room is not required. The court further held that plaintiff's injury in fact is demonstrated by the non-compliance of the hotel's website. *Id*.

Other courts rejected the defendants' arguments that a plaintiff lacked standing unless she intended to book a room at the hotel.  See *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy v. Italia, LLC*, 19–cv-61938-COOKE/HUNT, DE 35 (S.D. Fla. 8/10/20)(rejecting nexus argument made at DE 17); *Kennedy v. Nisha, Inc.*, 8:20-cv-367-TPB-

CPT, DE 34, pp. 7-8 (M.D. Fla. 9/17/20)(denying motion to dismiss premised on this argument because the "the weight of the law, as it currently stands, supports Plaintiff's argument as to standing.")

In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20), one Georgia court granted default judgment after an evidentiary hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant ORS. The court additionally found that the plaintiff had standing because she visited the ORS both before and after the lawsuit was filed "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. § 36.302(e)(1)." *Id.* at p. 5.

Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations system. See *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018) (holding plaintiff's allegations that she visited defendant's website but was unable to independently ascertain the accessible features were sufficient to allege an injury-in-fact); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018) ("[T]he Court finds that Plaintiff has shown that she suffered an injury-in-fact when she encountered the ADA violations on the Website."). *Poschmann v. Liberty Inn Motel, LLC*,  2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019)(court issued ruling on venue holding that injury occurred in plaintiff's home when he visited hotel's discriminatory online reservations system); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017)(holding that the plaintiff suffered injury when she visited the hotel's

discriminatory ORS and this occurred where she was located when she reviewed the website); *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017)(same). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp.  30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website).

Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018) ("Plaintiff suffered a concrete injury  when he attempted to access the website but was unable to fully and effectively utilize it."); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018) (explaining that the inability to determine a public accommodation's accessibility information via its website constitutes an injury-in-fact because it is "direct exposure to differential treatment of a person with a disability."). For example, in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website...

> Defendant argues that Plaintiff lacks standing as a result of the distance between her

residence and the physical hotel.  However, the applicability of the distance argument to website

discrimination cases has been widely rejected. See, e.g. *Camacho v. Vanderbilt University,* 2019

U.S. Dist. Lexis 209202, at *30 (S.D.N.Y. 2019). In *Parks,* 2020 U.S. Dist. Lexis 86790 at *6,

the court ruled that the long distance between the hotel and the plaintiff's home weighed in the

plaintiff's favor because hotels cater to travelers from afar.[1]  Numerous other courts have

criticized the distance factor's applicability to hotels and website discrimination cases. *Gold Sun*

*Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31;  *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist.

Lexis 80111, * 9 (M.D. Fla. 2019).  Another court has held that the distance factor not applicable

to commercial websites (in vision impaired discrimination) because (1) website cases do not

involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain*

*You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).  "The relevant 'future

injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's]

physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.

## V.  The Rules Of Statutory Construction Require That Defendant's Physical Nexus Argument Be Rejected

It is paramount that the plain words of the Statute and duly promulgated Regulation

govern.  Several general maxims apply. Statutory interpretation always "begins with the plain

language of the statute." *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). "It is well

---

[1]Numerous other courts have held that the proximity test is not applicable in the context
of hotels because hotels are, by nature, established to accommodate travelers from afar. *Bodley v.
Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina
Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen
Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .  *Access 4 All, Inc. v.
539 Absecon Blvd.*, 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled
that a plaintiff who lives ***too close*** to a hotel has no standing to sue for compliance. See *Access 4
All, Inc. v. Thirty East 30ᵗʰ Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

established that, when the statutory language is plain, we must enforce it according to its terms."

*Id*. A court's "inquiry must cease if the statutory language is unambiguous and 'the statutory

scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

"Our duty is to say what statutory language means, not what it should mean, and not what it

would mean if we had drafted it." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34

(11th Cir. 2013), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL

4750549, at *10 (11th Cir. 2013).  "We are not at liberty to rewrite the statute to reflect a

meaning we deem more desirable."  *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.

      In other words, an interpreting Court must look to the plain language of the Statute and

Regulation in analyzing whether a disabled person who encounters a discriminatory ORS has a

cause of action or whether they must ADDITIONALLY intend to book a room at the hotel or

ADDITIONALLY encounter discriminatory conditions located at the physical premises.  More

significantly, if such additional restrictive language is found elsewhere in the Statute, but not in

the provisions governing the case at bar, such exclusion is dispositive.

>  "[W]here Congress includes particular language in one section of a statute but omits it in
> another section of the same Act, it is generally presumed that Congress acts intentionally
> and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987). See also *De Osorio v. United States INS*,

10 F.3d 1034, 1041 (4th Cir. 1993).

      Plaintiff's claims are based on the following:

42 U.S.C. Section 12182(a) provides:

> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies
> and procedures this subchapter provides to any person who is being subjected to
> discrimination on the basis of disability in violation of this subchapter...

42 U.S.C. Section 12182(a) provides:

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of

Justice ("DOJ").[2] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter

"Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations

---

[2]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. The plaintiff's right to injunctive relief is accorded by 42 U.S.C. Section 12188(a), which provides that: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person who is being subjected to discrimination** on the basis of disability in violation of this subchapter..." (Emphasis added.)  A disabled person who encounters a non-compliant ORS becomes entitled to relief under this provision pursuant to two different subsections "of this subchapter".

First, 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..."  A commercial website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). Because a hotel's reservation  website system is a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[3]

Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination"

---

[3]An online reservations system may also be characterized as a  privilege or advantage, also referenced in Subsection 12182(a).

includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed.

15

In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[4] **did NOT** contain this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language contained in one Subsection of Title III cannot be applied to other Subsections of the same statute where that language is missing.

This "client or customer" analysis regarding was similarly applied by the *Marod* Court when it held that testers have standing, that they do not need to be a client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34. However, the *Marod* Court additionally relied heavily on other similar opinions involving different language and applying the rules of statutory construction.

In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes. Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the *Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

The Supreme Court concluded that a black tester who was misinformed about the

---

[4]Subsection 12182(a) is the same Subsection that governs the instant action.

availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.

In considering the tester's standing, the Supreme Court in Havens Realty explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 373, 102 S. Ct. at 1121* (alterations adopted) (quoting *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975)*); see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, 102 S. Ct. at 1121*.

*Marod*, 733 F.3d at 1330. The Court also noted:

The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]

The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374*; *102 S. Ct. at 1121*. The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty, 455 U.S. at 374*; *102 S. Ct. at 1122*.

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain language of the statute gave a right of action to a civil rights tester who encountered **discriminatory  information** about an apartment **even though they did not intend to rent the apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient.

17

In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*.

In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374.

In *Marod*, the Court stated:

> These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.

The ability or inability to obtain information in violation of a statute was recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

18

524 U.S. at 21.

Informational injury has been recognized in this Circuit. In *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 263-64 (4th Cir. 2014), the Fourth Circuit recognized that a plaintiff "suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute".  See also *Murray Energy Corp. v. McCarthy*, 2015 U.S. Dist. LEXIS 39130 *20-21 (N.D.WVa. 2015).[5]

Under the above cited cases, an ADA plaintiff does not have to be a client or customer or a bona fide customer and his motive or intent are entirely irrelevant. All that is required is that they encounter discrimination within the plain meaning of the words of the statute. This includes discrimination in the form of information without any visit or intent to visit the property which is the subject of that information. There is no additional requirement that they intend to use or visit the physical property, unless the applicable statutory provisions expressly say so. Thus, there is no room left to reach an interpretation that a disabled plaintiff must intend to book a room at a hotel, or actually visit the hotel, before they can have a cause of action for a discriminatory online reservations system. Any language imposing such a requirement is completely absent. Neither the

---

[5]Other circuits have recognized strictly informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985)(tester who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); Tandy v. City of Wichita, 380 F3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure).  Indeed the *Hernandez* court addressed the *Nickelodeon* ruling by ignoring it entirely.

general provision of 42 U.S.C. Section 12182(a), the definition of "discrimination" under 42

U.S.C. Section 12182(b)(2)(A)(ii), nor the Regulation contain any such requirement. To the

contrary, failure by the Defendant to make its online reservations system compliant with the

Regulation constitutes "discrimination" within the meaning of Subsection 12182(b)(2)(A)(ii)**.**

This then is prohibited by the general provision of Subsection 12182(a) because the disabled

person is deprived of full and equal access to a service. It does not then matter whether an ADA

tester intended to do anything more than what is set forth in the statute. The words "no individual

shall be discriminated against..." means that **any** disabled person who encounters a

discriminatory service has a cause of action, regardless of whether they are a tester and regardless

of their intent. Moreover, Subsection 12188's granting of injunctive relief to "any person who is

being subjected to discrimination" cannot be interpreted to impose any requirements that would

reduce "any person" to "only some people".

> To the extent there is any room for doubt, there is in fact **another** subsection of the

Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C.

Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an
> individual with a disability or any class of individuals with disabilities *from* fully and
> equally enjoying any goods, services, facilities, privileges, advantages, or
> accommodations..." (Emphasis added.)

> In that Subsection, the word "from" is critical because its insertion in the Subsection

means that a disabled person's encounter with discriminatory eligibility criteria by itself does not

give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal

access to goods or services. This word, however, is conspicuously absent from either the

Statute's Subsections or the Regulation that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of  ... services, ..., privileges, advantages..."

The Supreme Court's opinion in *Bates v. United States*, 522 U.S. 23, 29 (1997) is helpful. In Bates, the Supreme Court held that the requirement of intent could not be imported from one section of a statute (where it was included) into another section of the statute where it was omitted.  For this same reason, the imposition of the requirement that plaintiff intend to book a room or visit the hotel is improper.

Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury[6].  However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. In this regard, the *Spokeo* Court stated:

---

[6]It should be noted that the Fair Credit Reporting Act was intended to protect one class of persons, debtors, from incorrect information provided to a different class of persons, creditors. By contrast, in anti-discrimination statutes such as the ADA, the injury occurs when the disabled person receives the discriminatory information from the defendant.

Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court,

in turn, referenced *Havens Realty* as follows:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*,

but instead acknowledged the body of law to which *Havens Realty* belongs.[7]  Indeed, the

concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553

(Thomas J., Concurring). *Havens Realty* was also recognized in Spokeo's dissent. 136 S.Ct. At

1555 (Ginsburg, J. Dissenting).

In *Witt v. CoreLogic Saferent, LLC*, 2016 U.S. Dist. LEXIS 110662 (E.D. Va. 2016), one

court considered the application of *Spokeo* to informational injury and held that the proposition

of injury created solely by a statute survives *Spokeo*, "subject to qualification, depending on the

facts of each case and the considerations articulated above, but nevertheless intact" *Id.* at 18. The

---

[7]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

court noted that: "Importantly, the Supreme Court in *Spokeo* confirmed its previous holdings in *Federal Election Comm'n v. Akins* and *Public Citizen v. Department of Justice*, both of which teach that Congress may create a legally cognizable right to specific information, the deprivation of which constitutes a concrete injury sufficient to satisfy Article III." *Id*., at *22.  The court further stated that: "In the wake of *Havens*, *Akins*, and *Public Citizen*, it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which constitutes a concrete injury." *Id*. at *23. See also *Thomas v. FTS USA*, 193 F.Supp.3d 623 (E.D. Va. 2016)(providing similar *Spokeo* analysis to informational injury).

Applied to the case at bar, the Regulation unambiguously requires that hotel online reservations services provides certain information and the option to book accessible rooms to disabled persons, such as the plaintiff. The failure in this regard constitutes "discrimination". 42 U.S.C. Section 12182(b)(2)(A). Moreover, Plaintiff is thus "discriminated against... in the full and equal enjoyment of the ... services... of any place of public accommodation" within the meaning of 42 U.S.C. Section 12182(a). Therefore, Plaintiff has suffered an injury in fact and has the rights accorded under 42 U.S.C. Section 12188(a)(1) as "any person who is being subjected to discrimination..." Thus, Congress and the DOJ have created an injury in fact when a disabled person encounters a non-compliant ORS.[8]

## VII.    Defendant's Reference To Griffin Is Unavailing

Defendant cites *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019). However, the Defendant completely overlooks the disclaimer set forth in *Griffin* that its

---

[8]*Havens Realty* was decided many years before Congress enacted the ADA and, therefore, Congress was certainly aware of the meaning of Section 12188's "any person" and 12182's "no individual shall".

holding was confined to circumstances where the plaintiff was legally barred from becoming a member of the defendant's exclusive credit union. *Id.*, at 653. The court specifically stated that it was not considering "the rights generally of people with disabilities to sue for Internet-based harms under the ADA". 912 F.2d at 653. The context in which Griffin fits in with the law is illustrated by the Seventh Circuit's opinion in *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 832-33 (7th Cir. 2019) , which followed and expressly stated its holding was "no broader" than *Griffin*. Significantly, the *Carello* Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello does not complain that the Credit **Union withheld information**...." *Id*. at 835 (emphasis added). Thus, the *Carello* Court expressly distinguished the statute at issue therein with the type of statute and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello* Court recognized that informational injury is actionable when the defendant fails to provide information to a plaintiff that a law entitles him to obtain and review for some substantive purpose. *Id*. at 835. "Once that occurs, there is no additional requirement that the plaintiff suffer any additional harm beyond his or her failure to receive the information that the law renders subject to disclosure. *Id.*, citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Specifically, the *Carello* Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain  and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas [v. Madison Ave., Assoc*., 926 F.3d 329,] 337-38 [(7th Cir. 2019)] ("[Akins and Public Citizen] hold that the denial of information subject to

public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

In this regard, *Carello* squarely establishes that this Court must recognize Plaintiff's right to sue. The Regulation was promulgated for the purpose of providing a right of this plaintiff and other disabled persons to the right to book a room and further requiring the provision of specific information regarding accessibility at a hotel.

## VIII.   Testers Have Standing

Two circuit courts have recognized the standing of ADA testers. *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013).  As explained in *Marod*, the ADA affords injunctive relief to "any person who is being subjected to discrimination". 42 U.S.C. Section 12188(a). 42 U.S.C. Section 12182(a) provides that "No individual shall be discriminated against on the basis of disability...." The *Marod* Court compared these all encompassing terms to the language of the statute at issue in *Havens Realty*, in reaching the conclusion that testers have standing. *Marod*, passim.  As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute.  *Marod*, *passim*.

Moreover, courts have widely recognized the public policy served by plaintiffs acting as "private attorneys general" in enforcing the provisions of the ADA. *See  Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a

meaningful opportunity to vindicate the important Congressional policies which these laws

contain."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999); *Mallory v.*

*Harkness*, 923 F.Supp 1546, 1551 (S.D. Fla. 1996) ("Congress intended Section 1988 to prompt

plaintiffs to act as citizen enforcers or private attorneys general advancing our nation civil rights

objectives and vindicating the liberty of all citizens."). "Civil rights law depends heavily on

private enforcement. Moreover, the inclusion of  penalties and damages is the driving force that

facilitates voluntary compliance with the ADA." *Parr v. L & L Drive-Inn Restaurant*, 96

F.Supp.2d 1065, 1082 (D. Hawaii 2000). Courts have noted: "As a result, most ADA suits are

brought by a small number of private plaintiffs who view themselves as champions of the

disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be

necessary and desirable for committed individuals to bring serial litigation advancing the time

when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty*

*Corp*., 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538

F.3d 1031, 1040 (9th Cir. 2008). See also *Harry MackLowe Real Estate Co.*, 6 F.3d at 904

(acknowledging testers right to enforce private attorney general statute).

The result of a private attorney general statute such as the ADA is that "[i]t is not

unprecedented in this country for advocacy groups and individual members of advocacy groups

to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil

rights." *Marod*, 733 F.3d at 1326.

Other courts have held that status a tester " plausibly increases the likelihood that he or

she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram*

*Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing  *Gold Sun Hospitality, LLC,*

No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, \*17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury).

In cases such as *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019), which discuss a plaintiff's intent to go to the hotel, such discussion is typically in the context of the court's assessment of the plausibility that the plaintiff would return to the website. In other words, what reason does the plaintiff have to revisit the hotel's ORS. For instance, in *Poschman v. Coral Reef Of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457, \*8 (S.D. Fla. 5/22/18), the court held that returning to the website to book a room is one valid reason and checking it for compliance with the Regulation is another.

In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed 50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist. Lexis 209202, at \*29. The court addressed this argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future  if he could visit their website" is present in many, if not all, of the other complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states. []. Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future." []
>
> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended

 to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. [] Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person.[]. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

*Id*. at. ** 29-31. Thus, regardless of whether or not the plaintiff intends to visit the subject property, the real issue is whether or not the plaintiff intends to visit the website.

Critically, in the instant case, the Plaintiff has a system whereby she maintains and constantly updates a list of all hotels she has sued regarding their online reservations systems. Laufer Affid. para. 8.  She makes sure she visits the ORS in each case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law. *Id*. Thus, she insures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under *Parks*., 2020 U.S. Dist. Lexis 86790, at *7, this suffices to establish standing. Moreover, not only did this Plaintiff visit the hotel's discriminatory online reservations system multiple times before she filed suit, but she has visited it again twice since filing suit  pursuant to her system. Laufer Affid., paras. 6, 8. Thus, Laufer proved to be true to her word when she averred that she intended to return to the websites in the near future. At least two courts have held that post-complaint visits establish standing. See *Payne v. Boston Market Corp*., E.D. N.C. 5:12-cv-354, DE 16 (3/12/13); *Kennedy v. Omega Gas*, 9:17-cv-80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

Placed into context, tester standing does not add to a Plaintiff's but neither does it subtract from it.  Under PGA Tour, Havens Realty and the other authorities cited above, the plain and unambiguous words of the statute must be enforced and intent cannot be imposed as an

additional requirement.

### IX.    Plaintiff Intends To Book A Room In Maryland Hotels

Although it is not necessary, Plaintiff does indeed intend to visit and travel throughout the State of Maryland.  Laufer Affid. para. 5. Thus, Plaintiff will be staying in area hotels located throughout the state when she visits. The failure of this and so many other hotels to allow for booking of accessible rooms and failure to provide information about whether or not the features at the hotels are even accessible makes it difficult for Plaintiff to make meaningful choices because she is deprived of the information she needs. *Id*.

### XI.    Defendant's Argument That The ADA Does Not Govern Websites Is Without Merit

Defendant argues that the ADA does not govern "websites".  This is completely disingenuous. First, Congress expressly granted the DOJ promulgation authority by virtue of 42 U.S.C. Section 12186(b),  requiring the Attorney General to issue regulations "applicable to facilities... covered under section 12182 of this title".  In one case involving the Regulation, one Court stated: "[b]ecause Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, the regulations must be given legislative and, hence, controlling weight unless they are arbitrary, capricious or plainly contrary to Statute." *Kennedy v. Gold Sun Hospitality, LLC,* 8:18-cv-842, Hearing Transcript at 29-30 (M.D. Fla. 6/18/18). See also *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018)(recognizing that the DOJ promulgated the Regulation to carry out the provisions of the ADA). A regulation promulgated pursuant to Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

Therefore, by virtue of the fact that the Defendant's ORS obligations flow directly from

the Regulation, and that the Regulation is to be according controlling weight, Defendant's argument is completely lacking in any basis.

It should be noted that similar challenges have been made with respect to a vision impaired disabled person's right to seek injunctive relief pursuant to the ADA in cases involving screen software compatibility of commercial websites. Although these cases involve the same subsections of 42 U.S.C. Section 12182, they do not involve a promulgated regulation at all. Nonetheless, the Eleventh Circuit ruled in *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752 (11th Cir. 2018)(unpublished opinion), that the ADA does apply to commercial websites because they are a service of the public accommodation. In *Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018), the Eleventh Circuit held that a disabled person who encounters a discriminatory commercial website has the right to injunctive relief pursuant to the ADA.  See also *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), *cert. denied*, 2019 U.S. Lexis 5397 (Oct. 7, 2019)(holding that the ADA applies to commercial websites with respect to discrimination claims by vision impaired individuals).

Defendant correctly states that its ORS is not "a place of public accommodation". However, it is a "service...of..." the hotel and its discriminatory ORS violates both Subsections 12182(a) and 12182(b)(2)(A).

## XII.    Defendant Is Liable For Third Party ORS Providers

Defendant also claims that it has no ownership or control over the Third Party ORS Providers. This claim is an outright falsehood.

First, Defendant deliberately fails to disclose to this Court that none of the above referenced third parties provide online reservations services for free. In all instances, they operate

30

only by contract. The Defendant most certainly accepts reservations and payments through these

third parties. The third parties sole and exclusive source of information regarding available

rooms, photos, pricing, etc. came from the Defendant. There is a constant interaction between the

Defendant's hotel and these third party sites. Indeed, in instances such as Expedia, the Defendant

has a username and password that gives it direct access to, and control over, its website

maintained on the Expedia platform. Hotels typically upload their own information to such

websites on a constant basis. Therefore, Defendant is deliberately misrepresenting that it has no

control.

The Regulation imposes liability on Defendant for its discriminatory online system, even

if operated through third parties.   28 C.F.R. Section 36.302(e)(1) (the "Regulation"), provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases
> (or leases to), or operates a place of lodging shall, with respect to reservations made by
> any means, including by telephone, in-person, **or through a third party** -

(Emphasis added.)

Thus, the Regulation is unequivocally clear and imposes liability on hotels which operate

discriminatory reservations systems through third parties.  The DOJ, which promulgated this

Regulation, issued guidelines on the subject at issue. In this regard, the DOJ stated:

> Hotels and organizations commenting on their behalf also requested that the
> language be changed to eliminate any liability for reservations made through third parties,
> arguing that they are unable to control the actions of unrelated parties. The rule, both as
> proposed and as adopted, requires covered public accommodations to ensure that
> reservations made on their behalf by third parties are made in a manner that results in
> parity between those who need accessible rooms and those who do not.
>
> Hotels and other places of lodging that use third party reservations services must
> make reasonable efforts to make accessible rooms available through at least some of these
> services and must provide these third party services with information concerning the
> accessible features of the hotel and the accessible rooms. To the extent a hotel or other
> place of lodging makes available such rooms and information to a third party reservation

31

provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

Guidelines for 28 C.F.R. Part 36, Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities, Exhibit B attached hereto, p. 133. Thus, it is plainly clear that a hotel is directly liable for any failure of its online reservations system to comply with the Regulation, even if operated through third parties. See *Parks v. Richard*, 2020 U.S. Dist. Lexis 127639, passim (M.D. Fla. 7/21//20)(hotel liable for discrimination through third party sites).

## XIII.  Conclusion

For the foregoing reasons, Defendant's Motion is without merit and should be denied.

Respectfully submitted,
*/s/ Tristan W. Gillespie*
Tristan W. Gillespie, Esq.

THOMAS B. BACON, P.A.
5150 Cottage Farm Rd.
Johns Creek, GA 30022
Tel:  404.276.7277
gillespie.tristan@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2020, a copy of the foregoing Memorandum in Opposition to the Motion to Dismiss was filed electronically and served on all counsel of record via the Court's CM/ECF system.

*/s/ Tristan W. Gillespie*

32